PRICE, Judge.
Plaintiff, Troy Culp d/b/a Arkansas Stone Company, sued defendant, James E. Bearden, for recovery of the purchase price of a fireplace. Defendant answered that the fireplace was defective and unfit for the use for which it was intended and prayed for rescission of the sale. From a judgment rejecting his demand and rescinding the sale, plaintiff appeals, we reverse upon a finding that the trial court’s conclusion that the fireplace was defective is clearly wrong and not supported by substantial evidence in the record.
Plaintiff is the owner of a business in West Monroe specializing in the sale of masonry supplies, stone, and fireplace equipment. On November 14, 1979, he sold a fireplace marketed under the brand name “Preway Provider” to defendant for the sum of $669.50. The fireplace is sold disassembled with instructions for installation provided by the manufacturer. Plaintiff asked defendant if he wished to have the fireplace installed and was informed that defendant had already made other arrangements for installation. The fireplace was picked up at plaintiff’s place of business by defendant’s son and after plaintiff checked to insure that the installation instructions were in the box, Delane Bearden took the fireplace to his father’s house in his pickup.
Defendant had directed one of his employees, Raymond McMurty, to install the fireplace. Defendant’s house was originally constructed with a flat roof covered with tar and “pea gravel.” Subsequently, the original roof was covered with a more conventional sloped or gable roof. This new roof line created an “attic” space between the old tar roof and the new exterior sloped roof. McMurty installed the fireplace against an outside wall with the stack from the fireplace extending through the ceiling and old roof line into a fire “support box” which was installed in the attic space. At this point another pipe joined the stack from the fireplace and extended on through the exterior roof line.
McMurty encountered difficulties with the installation from the outset. Apparently because of the proximity of the fireplace to the outside wall, McMurty discovered *824 that he had an insufficient area between the old and new roof lines for installation of the stovepipe. He was supplied with a fire support box by plaintiff which was described by McMurty as a small square box approximately 10 to 12 inches high which apparently was to receive the stovepipe from the ceiling. Since the area in the “attic” directly above the stovepipe was only 6 to 8 inches high, McMurty altered the support box by trimming it two inches.
When McMurty first attempted to cut a hole in the ceiling for the stovepipe, he struck a ceiling joist or support and had to remove the ceiling opening over several inches. Although the testimony is somewhat less than clear, this apparently resulted in the two stovepipes joining at an angle. McMurty testified that he was not satisfied with the fireplace as assembled “mainly on account of the way the two pipes went together.”
Plaintiff testified that he was aware of McMurty’s problems with the installation and had reassured him that the fireplace would work in defendant’s house. Plaintiff testified that he had furnished defendant with one support box for the installation but nevertheless took a second one to defendant’s house after McMurty had stated that he had not received the first box. Plaintiff testified that he saw the fireplace after it had been installed at defendant’s house and noticed that the fireplace was installed improperly in his opinion. Plaintiff stated that the fireplace was sitting on a stack of loose, unmortared bricks and the stovepipe appeared to be slanted from the top of the fireplace to the ceiling.
One night, in late November 1979, shortly after the fireplace was installed, a fire ignited in the attic space directly above the stovepipe of the fireplace. Delane Bearden, defendant’s son, and his brother-in-law picked up the fireplace and carried it into the yard while defendant extinguished the fire in the attic with a water hose. Christine Bearden, defendant’s wife, testified that the fire in the fireplace that evening was not of unusual size. She did admit however that defendant had noticed the fire was not heating the house like it should so some additional pine wood was added to the point where the fire was “burning good.” Mrs. Bearden stated that the piping from the fireplace to the ceiling was “glowing hot” immediately prior to the discovery of the flames in the attic. Defendant did not testify at the trial.
The trial court denied plaintiff’s demand for recovery of the sales price and ordered the sale rescinded upon finding that the fireplace was not fit for the use intended. Although the fireplace was suitable “so far as the court knows for a normal installation,” the trial court held that plaintiff was aware of the particular characteristics of defendant’s house and the type fireplace required to suit those needs and, therefore, breached his warranty obligation when the fireplace proved unsuitable for defendant’s house.
The applicable codal provisions are the following:
Art. 2520. Redhibition, definition. Red-hibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.
Art. 2529. Seller’s mistaken declaration as to quality of thing. A declaration made in good faith by the seller, that the thing sold has some quality which it is found not to have, gives rise to a redhibition, if this quality was the principal motive for making the purchase.
The issue on appeal is whether defendant, in his defense against plaintiff’s action for the price of the fireplace, carried his burden of proving that the fireplace was unfit or unsuitable for installation in defendant’s house despite plaintiff’s representations to the contrary. Plaintiff contends that the fireplace was installed improperly and not in accordance with the manufacturer’s instructions. Defendant on the other hand, through his employee, McMurty, insists that the instructions were properly followed. Implicit in the trial court’s conclusion is a *825 finding that McMurty did install the fireplace according to the instructions. We find this to be clearly wrong or manifestly erroneous and therefore reverse.
Defendant declined plaintiff’s offer to install the fireplace choosing instead to rely on the services of Raymond McMurty, a full-time employee of defendant who had never before installed a “Preway Provider” fireplace. McMurty testified that he followed the instructions “as he went along” although he admitted that he did not check the parts list before beginning to determine if all necessary parts were included. McMurty stated that he “followed the pamphlet” and Christine Bearden testified that McMurty installed the fireplace according to an instruction manual with color photographs. Plaintiff’s testimony indicates that the instruction manual referred to by McMurty and Mrs. Bearden was not the factory instructions which were included, but rather a brochure that plaintiff regularly gave to his customers.
McMurty testified that the fireplace was installed in a corner of defendant’s house. There was a discrepancy in the testimony as to the distance that was allowed between the fireplace and the walls. The trial court noted that McMurty mentioned three feet as the proper distance between the fireplace and the walls, whereas Mrs. Bearden indicated the distance was somewhere between one foot and 18 inches. Jeff Lowe, sales representative for Preway fireplaces, testified that although he was not sure as to the exact distance, he did state that the fireplace was a “free standing” fireplace and was not meant to be “flush to the wall.”
McMurty admits he was concerned about the installation in part because the stovepipe from the fireplace entered the ceiling at an angle instead of vertically. This could cause an improper seating with the vertical pipe running from the support box out of the roof line. The fact that the fire which forms the basis of this complaint broke out in the attic could be explained by sparks or heat escaping at the joint of these two pipes.
As already stated, this suit turns on a determination of whether the instructions were complied with and both parties make frequent reference to them. Reference to the instructions in relation to the witnesses’ testimony would have been particularly illuminating to the trial court. However, the instructions were never introduced in evidence and form no part of the record on appeal. Without more than the conflicting testimony presented, it is abundantly clear that defendant has failed to prove by a preponderance that the fireplace was properly installed in accordance with the instructions. We therefore must conclude that the trial court’s finding to the contrary is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
For the reasons assigned, the judgment appealed is reversed. There being sufficient evidence in the record to support plaintiff’s main demand, there is now judgment in favor of plaintiff and against defendant for the unpaid purchase price of Six Hundred Sixty-Nine and 50/100 ($669.50) Dollars, together with legal interest thereon from date of judicial demand until paid and all costs of these proceedings including cost of this appeal.